IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                Plaintiff,

v.                                                          ORDER

CHAD HENNEMAN, LORIE IVERSON, and                16-cv-733-jdp
LAURIE NEUROTH,

                Defendants.

---

Several motions are before the court in this case brought by pro se plaintiff James A. Lewis, currently incarcerated at the Wisconsin Secure Program Facility (WSPF).

I previously granted Lewis leave to proceed on First Amendment retaliation and Fourteenth Amendment equal protection claims against defendants, WSPF officials Chad Henneman, Lorie Iverson, and Laurie Neuroth, concerning harassment and discipline Lewis suffered in retaliation for his complaining about sexual harassment by Henneman. Lewis now moves to strike defendants' expert witnesses and extend the deadline for his response to defendants' summary judgment motion. Also, defendants have filed Henneman's disciplinary records under seal, as I directed them to do in response to Lewis's motion to compel. I will address each issue in turn.

A. **Motion to strike expert witnesses**

The court set a December 8, 2017 deadline for defendants to disclose their expert witnesses. Dkt. 13, at 5. But defendants did not disclose their expert witnesses—Lorie Iverson and Laurie Neuroth, two of the named defendants, and "any health care professional who treated plaintiff for medical or mental health care while plaintiff was incarcerated"—until

December 18. Dkt. 26. Plaintiff James A. Lewis asks the court to bar Iverson and Neuroth from testifying as experts because of the late disclosure. Dkt. 27. Defendants explain that their late disclosure was accidental: their counsel recorded the disclosure deadline as December 18 instead of December 8. Even an accidental late disclosure could warrant striking an expert witness to avoid prejudice to the opposing party. Courts automatically strike expert witnesses not disclosed by the deadline "unless [the] non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).

Lewis argues that I must bar defendants from testifying as experts solely because of the delay in disclosure. He points to another case, *Lewis v. McLean*, No. 14-cv-280 (W.D. Wis. filed Apr. 16, 2014), in which Magistrate Judge Stephen Crocker granted the defendants' motion to file certain security policies under seal as unopposed because the court had not yet received Lewis's opposition brief. No. 14-cv-280, Dkt. 67. Lewis argues that I must take the same hardline approach here, striking defendants' expert witness testimony simply because of the late disclosure. Overlooking the obvious differences between the motion to seal in the '280 case and the expert witness disclosures here, a common theme emerges: the lack of prejudice. In the '280 case, I disregarded the sealed materials when deciding the parties' summary judgment motions, *see* No. 14-cv-280, Dkt. 92, at 6, so there was no prejudice to Lewis. Here, Lewis has not identified any prejudice caused by the 10-day delay. Because the 10-day delay was harmless, I will deny Lewis's motion.

**B. Motion to compel production of disciplinary records**

In a December 14, 2017 order, I partially granted Lewis's motion to compel production of defendant Chad Henneman's disciplinary records and directed defendants to submit the disciplinary records for an *in camera* inspection to determine whether production is appropriate

in light of defendants' security concerns. Dkt. 25. I also directed defendants to "explain specifically what information they don't want to reveal and why" and "how best to allow Lewis to review the relevant portions of these records without compromising [WSPF] security." *Id.* at 3. Defendants have done so, and I have reviewed the records. I will order defendants to allow Lewis to review partially redacted copies of these records.

Defendants first propose that they produce a three-page exhibit containing Henneman's "record of disciplinary actions" and a key to the Department of Corrections work rules numbering system. Dkt. 37-1. They propose redacting the day and month of Henneman's date of birth. I agree with the proposed redaction and will order defendants to produce the redacted exhibit to Lewis.

Defendants argue that this "summary record contains sufficient information for Lewis's purposes." Dkt. 36, at 2. I disagree. The summary record offers only the most broad description of Henneman's on-the-job misconduct—Lewis wants the details, and as I previously explained, he is entitled to them under Federal Rule of Civil Procedure 26(b)(1).[1] Those details are available in a 163-page exhibit containing the employee investigation reports relating to Henneman's disciplinary record. *See* Dkt. 37-2. Defendants propose allowing Lewis to review a heavily redacted version of this exhibit, but not retain a copy of it.

---

[1] Also, the key to the work rules is inconsistent with the work rules Henneman actually violated. For example, Henneman was disciplined for violating work rule 12 several times—the key lists work rule 12 as concerning the consumption of alcohol or illegal drugs while on duty, but the underlying reports list work rule 12 as concerning verbal threats and intimidation. *Compare* Dkt. 37-1, at 3 *with* Dkt. 37-2, at 24. Providing Lewis with only the summary record and key would leave him with a fundamentally flawed understanding of Henneman's disciplinary history.

3

As for the redactions, defendants want to redact "[i]nformation relating to staff vs. staff conflict" because "if any inmate knows about a staff member's conflict with other staff, the inmate may use that information to attempt to create additional discord among the staff." Dkt. 36, at 3. They want to redact "all content in the investigatory interviews" because the "interviews contain detailed information about staff conflict and alleged misconduct between staff (other than Henneman) and inmates" and "not all the information discussed in the interviews related specifically to the event that prompted the disciplinary investigation in the first instance." *Id.* at 4. They want to redact "[i]nformation that reveals internal staff discussions about how staff should interact with inmates" because "it contains internal staff communications about how to interact with inmates (and in some instances includes communications about how certain staff behavior may prompt violence from an inmate)." *Id.* They want to redact "personal statements that Henneman expressed through the investigation process that do not pertain to the specific actions being investigated" because inmates could use this information "to prey on Henneman's vulnerabilities." *Id.* at 3–4. And they want to redact the names of all inmates and staff other than defendants, explaining that "Lewis does not need to know the identities of non-defendants who[] were part of an investigation." *Id.* at 4.

I would be sympathetic to defendants' security concerns if Henneman still worked at WSPF, but he doesn't. As a result, the majority of the proposed redactions appear unnecessary. But some of the other staff members named in the reports do still work at WSPF. I won't allow defendants to redact those staff members' names, as discovery of the identity of people who know of any discoverable matter "is so deeply entrenched in practice" that the Advisory Committee on the Rules of Civil Procedure found it no longer necessary to explicitly allow it

4

in the current version of Rule 26(b)(1). Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. But I will allow defendants to redact personal information and those portions of the reports that contain detailed information about people other than Henneman because they are irrelevant to Lewis's claims and pose a heightened security risk. Specifically, defendants may redact the following portions of Dkt. 37-2:

- Henneman's address on pages 1, 69, and 70

- Pages 10–11, 72, 78–80, 86, 89, 97–112, 129

- The middle of the last paragraph on page 8, between but not including "I have had very little contact with her since then" and "And then she replied, 'Once a bully, always a bully'"

- The last sentence of the first response on page 9, after "Talked to her the same way I talked to her on March 2nd"

- The content-of-interview section on page 15, with the exception of the last two questions and responses

- The last two sentences of the sixth response on page 19, after "what's missing in this?"

- The third paragraph on page 23, except the final sentence, "Henneman then said that Zeman said 'Once a bully always a bully'"

- The first three sentences of the employee response on page 26, until "In response to Lorie Iversons statement"

- The content-of-interview section on pages 75, with the exception of the last paragraph in response to question 4 (beginning "When Chad was still speaking to me")

- The first paragraph and last sentence in response to question 6 on page 76

- Question 7 and the first two sentences in response to question 7 on page 76

- Questions 19, 20, 24, 25, and 31 and their responses on pages 82–83

5

- Question 1 and its response on page 84
- The first two lines on page 87
- Questions 9 through 14 and their responses on page 87
- The first two lines of page 90
- Questions 21 and 22 and their responses on page 91
- The first sentence in the summary-of-conduct section of page 92
- The first two sentences in the summary-of-conduct section of page 93

And to further address defendants' security concerns, I will direct them to arrange for Lewis to view a redacted copy of the records—Lewis may not retain the copy. But defendants must allow Lewis sufficient time to review all of the records and take notes.

**C. Motion to extend summary judgment briefing**

I will also grant Lewis's motion to extend the deadline for his response to defendants' summary judgment motion, which they filed on the same day that they submitted the disciplinary records to the court, so that he is able to review these records before filing his response. Dkt. 39. Defendants oppose this, but Lewis asked for these records before defendants filed their summary judgment motion and promptly moved to compel their production when defendants refused to produce them. Perhaps the records won't help Lewis at summary judgment, as defendants argue, but there is no reason not to allow a pro se litigant the time to review discoverable material before filing his response brief when the delay in production was no fault of his own. Defendants ask in the alternative that I extend the rest of the schedule, including trial, to "accommodate additional time for Lewis's response." Dkt. 42, at 2. But the court's schedule already allows for additional time for briefing, as extensions like this are

sometimes necessary in pro se cases. Trial is not until July, and the extension will only set back summary judgment briefing by a few weeks. There is no need to reset the remainder of the schedule or continue trial.

ORDER

IT IS ORDERED that:

1. By February 5, 2018, defendants must arrange for plaintiff James A. Lewis to view a copy of Chad Henneman's disciplinary records, Dkt. 37-1 and Dkt. 37-2, redacted in accordance with the opinion above. Defendants must allow plaintiff sufficient time to review the records and take notes.

2. Plaintiff's motion for an extension of the summary judgment briefing schedule, Dkt. 39, is GRANTED. Plaintiff's response brief is due on February 28, 2018. Defendants' reply is due on March 12, 2018.

3. Plaintiff's motion to strike defendants' expert witnesses, Dkt. 27, is DENIED.

Entered January 29, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge