IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                Plaintiff,

    v.                                                                 OPINION & ORDER

CHAD HENNEMAN, LORIE IVERSON, and                16-cv-733-jdp
LAURIE NEUROTH,

                Defendants.

---

Pro se plaintiff James A. Lewis, a prisoner currently incarcerated at the Wisconsin Secure Program Facility (WSPF), filed this lawsuit alleging that defendants, WSPF officials Chad Henneman, Lorie Iverson, and Laurie Neuroth, harassed and disciplined Lewis in retaliation for his complaining about sexual harassment by Henneman. In a May 24, 2018 order, I granted defendants' motion for summary judgment and dismissed the case. Dkt. 100.

Now, Lewis has moved for reconsideration of my ruling. Dkt. 102. I construe his motion under Federal Rule of Civil Procedure 59(e). Such a motion "will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). Lewis moves under the first prong: he contends that "there were errors in the court's decision." Dkt. 102, at 1. So he must show that I committed a manifest error of law or fact. "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Lewis identifies five errors of fact. First, Lewis argues that I should have noted that Lebbeus Brown changed the finding of guilt on Lewis's July 30, 3015 conduct report to not guilty. But the only evidence of that change is the altered conduct report that was the basis for defendants' motion for sanctions. After a hearing on the sanctions motion, I explained that I would not consider the altered conduct report because I was not convinced that it was authentic. *See* Dkt. 99, at 3. So I did not err in that regard.

Second, he points out that I didn't go into the specifics of the February 16, 2016 incident; he argues that third-party reports of the incident support his version of the events and show that Henneman lied. And he points to Iverson's statement that there were "half-truths in everything [that Henneman] says" as further proof that Henneman lied. Dkt. 102, at 3. That may be, but it doesn't save Lewis from summary judgment. As I explained in the May 24 order, the record shows that Henneman was treating Lewis unfairly and disciplining him for reasons that might not have been fully legitimate. But the record does not show that Henneman did so in retaliation for Lewis's First Amendment activity. Without evidence linking Henneman's bad acts to Lewis's First Amendment activity, Lewis cannot succeed on his First Amendment retaliation claim. "General harassment and bullying does not amount to retaliation." Dkt. 100, at 13.

Third, Lewis states that the evidence indicates that a written policy requires Iverson and Neuroth to complete work performance evaluations every six months, but in fact, they had an unofficial policy of only completing evaluations "when a conduct report was written," which is what happened in Lewis's case. Dkt. 102, at 3. He argues that given these facts, "the court would have to conclude that . . . Lewis's work performance had not declined." *Id.* But even assuming that Lewis's work performance was good and that his poor performance evaluations

were based solely on Henneman's illegitimate conduct reports, there is still no evidence that any of the defendants were motivated by Lewis's First Amendment activity when they completed his conduct reports and evaluations. Without evidence of retaliatory intent, Lewis's First Amendment claims fail.

Fourth, Lewis points to the Wisconsin Department of Corrections' Executive Directive #72 concerning sexual abuse and sexual harassment in confinement, which requires the alleged perpetrator and victim of sexual abuse to be monitored for at least 90 days following a report of sexual abuse. *See* Dkt. 48-23, at 17. He argues that as a result, any adverse action by Henneman within 90 days of Lewis's First Amendment activity is retaliation, and that any adverse action by Henneman more than 90 days after Lewis's First Amendment activity is *also* retaliation because "Henneman would know Lewis was to be monitored for at least 90 days, and therefore waited at least that long to retaliate." Dkt. 102, at 5. But the mere fact that the Department of Corrections chose a 90-day timeframe to monitor for retaliation does not mean that any bad acts that occur within that 90-day period—or beyond—are retaliatory. There must be some indication that that the defendant took the adverse action because of the plaintiff's First Amendment activity. Here, there is no evidence from which a reasonable juror could infer that defendants completed the conduct reports and evaluations because of Lewis's First Amendment activity.

Fifth, Lewis notes that he took time off from work in late 2015 and early 2016. He argues that "the court must recognize Henneman could not retaliate against Lewis during the months Lewis was not at work." *Id.* But I noted these periods of non-work when deciding defendants' summary judgment motion; the fact remains that none of Henneman's adverse

3

actions occurred close in time to Lewis's First Amendment activity. There is no evidence of a retaliatory motive.

Lewis has not shown that I committed a manifest error of law or fact, so I will deny his motion for reconsideration.

ORDER

IT IS ORDERED that plaintiff James A. Lewis's motion for reconsideration, Dkt. 102, is DENIED.

Entered June 19, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge